IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENDALL G. GREEN** | : | **CIVIL ACTION** |
| *Plaintiff, pro se* | : | |
| | : | **NO. 21-1752** |
| **v.** | : | |
| | : | |
| **INTERNATIONAL ASSOCIATION OF** | : | |
| **MACHINISTS AND AEROSPACE** | : | |
| **WORKERS** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                FEBRUARY 7, 2023

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Kendall G. Green ("Plaintiff"), proceeding *pro se*, filed the present action against Defendant International Association of Machinists and Aerospace Workers ("Defendant" or the "Union"), asserting claims of unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Cons. Stat. § 955.  [ECF 1].  Specifically, Plaintiff alleges that Defendant unlawfully withdrew and then failed to pursue a labor grievance against Plaintiff's employer, American Airlines, because of Plaintiff's race.  Presently, before this Court is Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 22], which Plaintiff has opposed, [ECF 24].[1]  The issues presented in the motion are fully briefed, and, therefore, this matter is ripe for disposition.  For the reasons set forth herein, Defendant's motion for summary judgment is granted, and judgment is entered in favor of Defendant on all of Plaintiff's claims.

---

[1]     This Court has also considered Defendant's reply, [ECF 26], and Plaintiff's sur-reply, [ECF 27].

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant—here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows:[2]

Plaintiff, who is African American, has been employed since 1996 by US Airways/American Airlines as a Fleet Service Agent in the ABR Department at the Philadelphia International Airport ("PHL"). Plaintiff is currently a part-time employee and has been since 2019. Since the beginning of his employment, Plaintiff has been a member of a bargaining unit represented by the Union.

As a Fleet Service Agent in the ABR Department, Plaintiff's job duties primarily include transporting baggage from flights arriving at PHL to connecting flights or to baggage chute areas. Plaintiff and other Fleet Service Agents are assigned the various flights for which they will transport baggage throughout their shift. There is no set allotment of flights that a Fleet Service Agent is assigned at the outset of a shift; rather, flights are assigned as they come in, and it is possible for flight assignments to change during a shift. The number of bags per arriving flight and the number of locations to which bags must be taken from each flight varies greatly. On a given day, staffing issues, flight arrival times or delays, and the capacity of flights, among other things, can affect the workload of Fleet Service Agents. Plaintiff testified that it is not entirely clear how flights are assigned to Fleet Service Agents, and he alleges that discriminatory bias played a role in at least one instance.

Until the summer of 2020, ABR lead agents ("Leads") were responsible for assigning flights to Fleet Service Agents. Leads relied on a computerized system to assign each Fleet Service Agent to a flight, although Leads had the ability to manually override assignments generated by the system. For a given assignment, a Fleet Service Agent did not generally know whether that assignment was given to them by the system or was the result of a manual override by a Lead. Leads are not management-level employees and, like Fleet Service Agents, are members of the bargaining unit represented by the Union. The Union itself plays no role in assigning flights to Fleet Service Agents.

The Union's collective bargaining agreement ("CBA") with American Airlines contains a grievance procedure for the resolution of disputes arising under the CBA. Most grievances filed with American Airlines at PHL challenge

---

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes will be noted and, if material, construed in Plaintiff's favor pursuant to Rule 56.

disciplinary actions taken by American Airlines against union-represented employees, but some grievances are filed to challenge non-disciplinary actions by American Airlines that the Union believes violate the CBA. Well over one-hundred grievances are filed at PHL with American Airlines each year.

Local Lodge 1776 has a Grievance Committee that consists of three elected members of the Union. From January 2014 to February 2020, the Chairperson of the Grievance Committee was William ("Billy") Wilson. In February 2020, Mr. Wilson, who is Caucasian, became an Assistant General Chairman of District Lodge 141, a full-time staff position. As Assistant General Chairman of District Lodge 141, Mr. Wilson retained a role in handling grievances filed at PHL. When Mr. Wilson became Assistant General Chairman of District Lodge 141, Derrick Monk, who is African American, became the Chairperson of the Grievance Committee of Local Lodge 1776, after having served as a member of the Committee since 2014.

Local Lodge 1776 has approximately sixty shop stewards at PHL who also are employed by American Airlines. Shop stewards sometimes file grievances with American Airlines over issues arising in the workplace and must obtain permission from the Grievance Committee before filing a grievance. As described more fully below, however, Plaintiff contends that on at least one occasion, a shop steward filed a grievance on Plaintiff's behalf without permission from the Grievance Committee.

On March 4, 2019, Plaintiff and two other American Airlines employees at PHL — Andre Roundtree and Andre Fields — filed a federal lawsuit against American Airlines under Title VII, 42 U.S.C. § 1981, and Pennsylvania law. *Fields v. Am. Airlines*, Civil Action No. 19-0903 (E.D. Pa.). The complaint alleged, *inter alia*, that American Airlines discriminated against Plaintiff on the basis of his race when it assigned certain flights to him.

On or around April 17, 2019, Mr. Roundtree, a shop steward who worked in the Catering Department at PHL (a separate department from ABR), filled out, signed, and filed a grievance form on Plaintiff's behalf (the "April 2019 Grievance"). In the section of the form titled "Statement of Grievance Presented for Settlement (indicate provisions of contract or company policy, if known)," Mr. Roundtree wrote:

> Management has allowed ABR mainline leads to discriminate against the part time agents who are mostly minority by giving them heavier workloads (flights) than the full-time agents who are mostly white. This behavior is consistent with American Airlines management's disparate treatment of minority employees at PHL. This is a violation of the CBA Art. 1 Sec. B. I am seeking a full and thorough investigation into the discriminatory practices of

3

>American Airlines management and leads including but not limited to an audit of all main line lead flight assignments.

The section of the CBA cited in the April 2019 Grievance, Article 1, Section B, prohibits discrimination by American Airlines based on union-membership status. It does not address racial discrimination. A separate section of the CBA — Article 1, Section E — prohibits discrimination against American Airlines' employees on the basis of race and certain other protected characteristics.

Mr. Roundtree did not ask the Union's Grievance Committee for permission to file the April 2019 Grievance on behalf of Plaintiff. According to the Union, as a shop steward in the Catering Department, Mr. Roundtree did not have authority to address Union-related issues outside of the Catering Department. At all times relevant to this case, Plaintiff has worked in the ABR Department, not the Catering Department. Plaintiff disputes Mr. Roundtree lacked authority to file the grievance on Plaintiff's behalf, and he points to incidents where other shop stewards filed grievances on behalf of members not within their department and an instance where Mr. Wilson investigated a potential grievance filed by Plaintiff himself, who was not a shop steward.

On January 20, 2020, Plaintiff asked Mr. Monk to file a grievance for racial discrimination because the last flight to which he was assigned that day was "a container flight due in at 9:27am" and he "believe[d] that [he] was potentially given this flight in an effort by American Airlines to continue to harass, retaliate, and discriminate against me." Mr. Monk investigated the assignment in question by speaking with six or seven people, including with Ernie Hummel, the lead who assigned the flight. According to Mr. Monk, Mr. Hummel told Mr. Monk that he did not normally assign a container flight so close to the end of a shift, and that this was a mistake that would not be repeated. Because of Mr. Hummel's response, and because all of the six or seven employees with whom Mr. Monk spoke—most of whom are African American — stated that Mr. Hummel is fair in his assignments, Mr. Monk found no evidence of discrimination and explained his finding to Plaintiff.[3] The Union did not file a grievance regarding the January 20, 2020 flight assignment. Mr. Monk also repeatedly advised Plaintiff to go to the Human Resources Department of American Airlines if he still wished to make a complaint about this assignment.

On February 24, 2020, Plaintiff sent a text message to Mr. Monk asking him to "pls update me as soon as possible on the status of the discrimination grievance that has already been filed on my behalf roughly a year ago." Mr. Monk and Mr. Wilson contend that they were unaware of Plaintiff's April 2019 Grievance at the time. Plaintiff disputes Mr. Wilson's ignorance of the grievance.

---

[3] Though producing no evidence to the contrary, Plaintiff disputes the purported statements by Mr. Hummel and the other employees.

On March 23, 2020, Plaintiff asked Mr. Monk and Mr. Wilson to file a grievance because on the day before, he received a flight assignment eleven minutes after his shift started at 7:00 a.m., whereas his white coworkers allegedly "had not received any work assignments (Flights) and it would be hours after I had received my work assignment before they were given a work assignment if at all." Within a few days, Mr. Wilson investigated this claim by obtaining records of the flight assignments for Plaintiff's coworkers on March 22, 2020; those records revealed that multiple white coworkers of Plaintiff had received flight assignments earlier than Plaintiff's and/or had received more flight assignments than Plaintiff on that day. The Union did not file a grievance based on Plaintiff's March 23, 2020 complaint.

On May 8, 2020, Plaintiff emailed Mr. Monk and Mr. Wilson a copy of the April 2019 Grievance, which Plaintiff had obtained from Mr. Roundtree. Plaintiff's April 2019 Grievance was scheduled to be reviewed by a hearing officer on May 29, 2020, but the Union withdrew the grievance on May 28, 2020, because the grievance did not allege a violation of Article 1, Section B of the CBA — which precluded discrimination based on union-membership status. While the April 2019 Grievance cites to the provision of the CBA precluding discrimination based on union-membership and not the section precluding discrimination based on race, the grievance does allege discriminatory practices by American Airlines against its part-time, mostly minority, agents.

In the summer of 2020, American Airlines removed the function of assigning flights from the job duties of the ABR leads and gave that function to management-level employees. Plaintiff then asked the Union to reinstate his April 2019 Grievance, but the Union did not.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

Plaintiff asserts that Defendant violated Title VII, § 1981, and the PHRA and engaged in discriminatory conduct when it refused to process a race discrimination grievance filed against Plaintiff's employer, American Airlines, on Plaintiff's behalf on April 17, 2019. As described above, Plaintiff's grievance alleged discriminatory practices by his employer relating to the

6

assignments of flights to the fleet service agents.  Plaintiff further contends that Defendant's stated reasons for not pursuing his grievance (being unaware of Plaintiff's grievance, incapable of locating the grievance, and unwilling to pursue the grievance because the section relied on was not applicable) lacked reason and were pretextual.  Specifically, Plaintiff argues that Defendant's discrimination stems from its "failure to properly conduct its grievance process" when it "deliberately conducted no investigation or fact-finding" of his grievance and then, "on the night before the grievance hearing," refused to proceed with the hearing.  Defendant disputes these contentions.

A union's deliberate failure to process a grievance can constitute a violation of Title VII,[4] the PHRA, and § 1981.  *Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 414 (E.D. Pa. 2014); *Boyer v. Johnson Matthey, Inc.*, 2005 WL 35893, at *8 (E.D. Pa. Jan. 6, 2005).  Because the scope of protection and the analytical framework for Title VII claims also applies to claims under § 1981 and the PHRA, this Court's analysis of the Title VII claims is applicable to all of Plaintiff's claims. *See Young v. Local 1201 Firemen & Oilers Union*, 419 F. App'x 235, 240 n.2 (3d Cir. 2011) (analyzing Title VII and PHRA claims the same); *Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 588 (E.D. Pa. 2017) (applying same analysis for Title VII and § 1981).

Where, as here, a plaintiff alleges no direct evidence of discrimination, the claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Hubbell v. World Kitchen, LLC*, 688 F. Supp. 2d 401, 430 (W.D. Pa. 2010) ("*Hubbell I*"); *see also Boyer*, 2005 WL 35893, at *9.  Under the *McDonnell Douglas* framework,

---

[4] The language of Title VII prohibiting discrimination by labor organizations, codified at 42 U.S.C. § 2000e-2(c), provides, in relevant part:  "it shall be an unlawful employment practice for a labor organization:  (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race . . . or (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section."

a plaintiff asserting a claim against a union must first make a *prima facie* case of discrimination by producing evidence to show that: (1) the employer breached the CBA with respect to plaintiff; (2) the union violated its duty of fair representation by permitting the breach to go unrepaired; and (3) the actions or inactions of the union occurred under circumstances giving rise to an inference of discrimination based on an impermissible criterion. *Id.*; *see also Lopresti v. Cnty. of Lehigh*, 2014 WL 1885278, at *6 (E.D. Pa. May 12, 2014); *Walker v. Pepsi-Cola Bottling Co.*, 2000 WL 1251906, at *8 (D. Del. Aug. 10, 2000) (citing *York v. Am. Tel. & Telegraph*, 95 F.3d 948, 955–56 (10th Cir. 1996)); *Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857, 868 (7th Cir. 1985).[5]

Defendant argues that Plaintiff has failed to present evidence sufficient to meet each of the *prima facie* elements of his discrimination claims. Because this Court finds that Plaintiff has not provided evidence to satisfy the third element, *i.e.*, the actions or inactions of the union occurred under circumstances giving rise to an inference of discrimination based on an impermissible criterion, it will not assess the first two elements. *See Walker*, 2000 WL 1251906, at *8 (declining to examine all three prongs when one prong was not met).

To support an inference of discrimination, the plaintiff generally must present comparator evidence, or "evidence that [the union] treated 'similarly situated' individuals not within [the plaintiff's] protected class more favorably than it treated [the plaintiff]." *See Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (quoting *Wilcher v. Postmaster Gen.*, 441 F.

---

[5] Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for abandoning the grievance process." *Hubbell v. World Kitchen, LLC*, 717 F. Supp. 2d 494, 506 (W. D. Pa. 2010) ("*Hubbell II*") (citing *McDonnell Douglas*, 411 U.S. at 802–03); *see also Boyer*, 2005 WL 35893, at *9. If the defendant satisfies this burden, the burden shifts back to the plaintiff to prove that the legitimate reason(s) offered by the defendant are merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804–05 (3d Cir. 1994); *Boyer*, 2005 WL 35893, at *9. Because this Court finds that Plaintiff has not met his burden with respect to the *prima facie* elements, it will not address the Union's additional pretext arguments.

App'x 879, 881 (3d Cir. 2011)). In the absence of comparator evidence, the plaintiff may present "evidence of similar [race] discrimination of other employees, or direct evidence of discrimination from statements or actions by [his] supervisors suggesting [race] animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). When using comparator evidence, "[t]he plaintiff has the burden of demonstrating that similarly situated persons were treated differently." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). For a person to be "similarly situated," the plaintiff must show that the person is similar in "all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009).

In his opposition brief, Plaintiff includes no substantive response to the Union's challenge to Plaintiff's failure to meet the final *prima facie* element. As such, Plaintiff's opposition is void of any evidence showing that the Union either treated similarly situated members outside Plaintiff's protected class more favorably or similarly discriminated against other members within Plaintiff's protected class. Moreover, Plaintiff testified that he was unaware of any similarly situated Caucasian (white) members who sought to file similar grievances about work assignments:

> Q. Mr. Green, are you aware of any white fleet service agents who have asked to file grievances about their work assignments since 2019?
>
> A. I would not have that information.
>
> Q. So no?
>
> A. No.

(Pl.'s Dep. Tr., ECF 22-2, 125:23–-126:7). Plaintiff also testified that he was unaware of any other African American members who asked the Union to file grievances:

9

> Q. Are you aware of any African American employees who have asked the union to file race discrimination grievances since 2019?
>
> A. I would not have that information.
>
> Q. So no?
>
> A. No, ma'am.

(*Id.* at 126:14–19). In addition, despite eight months of discovery, Plaintiff has not presented any evidence showing how the Union handled any other member's grievances. In the absence of any such comparator evidence, Plaintiff has not met his summary judgment burden with respect to the final *prima facie* element. *See Deans*, 998 F. Supp. 2d at 414–15 (granting summary judgment to union where plaintiff "alleges that the Union pursued three other employees' grievances more aggressively than his" but "has not introduced evidence of the facts underlying those employees' grievances" and "has therefore failed to show that he was similarly situated"); *Tillman*, 538 F. Supp. 2d at 771 (granting summary judgment to union where "plaintiff has no information on how the Union handled the grievances of any other union members, leaving the court no opportunity to compare plaintiff's experience with the experiences of her male co-workers").[6] Accordingly, Plaintiff has not met his *prima facie* burden, and Defendant's motion for summary judgment is granted.

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet his summary judgment burden with respect to any of his claims. Accordingly, the Union's motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows. *NITZA I. QUIÑONES ALEJANDRO*, J.

---

[6] While Plaintiff identifies two other occasions when the Union declined to pursue a grievance on his behalf, the undisputed record evidence shows that the Union fully investigated Plaintiff's claims and determined that they were without merit.